***********
The Full Commission has reviewed Plaintiff's Motion for Reconsideration and Defendant's Response to Motion for Reconsideration. The Full Commission finds that Plaintiff has shown good cause to reconsider the March 29, 2010 Opinion and Award. It is herby ORDERED that Plaintiff's Motion for Reconsideration is GRANTED. Accordingly, the Full Commission's Interlocutory Opinion and Award filed on March 29, 2010, is VACATED and RESCINDED. The Full Commission enters the following Opinion and Award and thereby affirms the September 23, 2008 Opinion and Award of Deputy Commissioner Rideout. *Page 2 
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between Employee-Plaintiff and Employer-Defendant at all times relevant herein.
3. All parties were properly before the Deputy Commissioner and that the Industrial Commission has jurisdiction over the parties and of the subject matter.
4. The employer in this case is Dubose International.
5. Plaintiff is a 43-year-old man who has a high school diploma. Plaintiff's work history primarily consists of installing cable television.
6. At the time of Plaintiff's injury he was an employee of Dubose International in Roseboro, NC. Dubose International is owned by Charles Dubose, who owns several businesses. Mr. Dubose owns a tire shop, a junkyard, and a saw mill. Plaintiff primarily worked at the junkyard. However, Plaintiff and other employees of Dubose International worked at all three sites intermittently.
7. On May 24, 2007, Plaintiff was loading wood at the saw mill to be used later to build shelters at the junkyard. The saw mill was on a farm owned by Mr. Dubose that also contained a tree farm and a hunting club. Plaintiff was driving and using a forklift to pick up logs. The starter switch on the forklift was in disrepair and it was necessary to use a screwdriver to start the machine while standing beside it. On May 24, 2007, Plaintiff cranked the starter with *Page 3 
the screwdriver when the forklift fell into gear and started moving. The forklift struck Plaintiff, knocked him down and ran over him. Plaintiff was lying in sandy dirt so that he was not completely crushed. Plaintiff suffered injuries to his bilateral shoulders, back, neck, head, and face.
8. Plaintiff was taken by ambulance to Sampson Regional Medical Center in Clinton, NC. X-rays were administered and Plaintiff was released. Defendant-Employer sent Plaintiff to treat with Dr. Agapito Fajardo, Mr. Dubose's family doctor, at Goshen Medical Center.
9. Plaintiff presented to Dr. Fajardo on May 25, 2007. The impression was abrasion of the face, neck, and right shoulder, cervical strain, and chest contusion. Plaintiff returned to Dr. Fajardo on May 30, 2007, with a swelling in his lower leg. On June 4, 2007, Dr. Fajardo released Plaintiff to return to work as of June 11, 2007.
10. Plaintiff was out of work for two-and-a-half weeks. Defendant-Employer paid him two weeks worth of wages. On approximately June 11, 2007, Plaintiff returned to work at Dubose International. Upon his return, Plaintiff was working at Defendant-Employer's junkyard. His main job duty was to separate transmissions, which are made of aluminum, from automobile engines, which are made mostly of steel. Plaintiff was experiencing pain in his back, shoulder, and neck during his return to work with Defendant-Employer.
11. Plaintiff returned to Dr. Fajardo on June 11, 2007, after having returned to work, with shoulder and neck pain, and a lump in his chest wall. Dr. Fajardo released Plaintiff to return to light duty work with no lifting more than 25 pounds for the following two weeks.
12. Upon Plaintiff's return to work at light duty, he was expected to do the same job duties that he performed before his compensable injury. Plaintiff was told that there was no light *Page 4 
duty work available for him to do. Plaintiff struggled to do his job for approximately two weeks. Defendant-Employer required Plaintiff to lift heavy objects, climb up and down on the forklift, help build shelters, and climb ladders, which he could not do. In June of 2007, after approximately two weeks after his return to work, Plaintiff left his job with Defendant-Employer. Plaintiff left the job because he was being forced to do work that he could not physically do after his injury.
13. Plaintiff returned to Dr. Fajardo on July 2, 2007. Dr. Fajardo noted that Plaintiff was having paresthesia in his left arm, ulnar distribution of the neck, and paresthesia of the fourth and fifth fingers on his left hand. Dr. Fajardo also noted neck stiffness with limited range of motion and numbness under the medial aspect of the left arm. Dr. Fajardo's impression was cervical strain and lumbar strain. Dr. Fajardo subsequently referred Plaintiff to Dr. Alexander Huff at Huff Orthopaedic.
14. Plaintiff presented to Dr. Huff on July 18, 2007, with persistent pain in his neck, left shoulder, and back. Dr. Huff's impression was lower back pain status post trauma and he ordered lumbar x-rays and an MRI. Dr. Huff released Plaintiff to sedentary work.
15. Plaintiff returned to Dr. Huff on August 13, 2007, with chronic lower back pain. Dr. Huff noted that an MRI revealed multi-level bulging of the fibers in the annulus and disc protrusion at L5-S1. Dr. Huff ordered physical therapy.
16. Plaintiff returned to Dr. Huff on September 27, 2007, with back and neck pain, and numbness under his arm. Dr. Huff's impression was lumbar pain and radiculitis of the cervical spine. Dr. Huff ordered an MRI of Plaintiff's cervical spine. Plaintiff was released to light duty with a 10-pound lifting restriction. Physical therapy was continued. Plaintiff was scheduled to return three weeks later after the MRI. *Page 5 
17. Defendant-Employer initially paid for Plaintiff's medical treatment and told him that they were going to provide ongoing treatment and pay for his medical bills. Plaintiff was told that his medical bills would be paid out of pocket so that the treatment would not increase Defendant-Employer's insurance rates.
18. Plaintiff's cervical MRI was never authorized by Defendant-Employer. Approximately six months after Plaintiff's injury, Plaintiff returned to Dr. Huff. He was told that he could not be seen because Defendant-Employer was no longer paying for his medical bills and had refused to authorize further medical treatment for Plaintiff.
19. Plaintiff continued to call Defendant-Employer to inquire as to why his medical bills were not being paid. Approximately six months after Plaintiff's injury, Plaintiff was told that Defendant-Employer did not have workers' compensation insurance coverage for his injury. Plaintiff was not aware that Defendant-Employer did not have workers' compensation insurance prior to that time and Defendant-Employer had not informed him of that fact.
20. Plaintiff testified that Defendant-Employer had anywhere between 10 and 15 employees at the time of his injury. This was confirmed by the Employment Security Commission records submitted into evidence. Those employees were dispersed between the saw mill, tire company, and junkyard.
21. Plaintiff was paid $10.00 per hour while working for Defendant-Employer, typically worked 45 to 50 hours per week, and earned approximately $450.00 per week before taxes, which amounted to approximately $320.00 per week after taxes.
22. During the period of time after Plaintiff left Defendant-Employer, he was out of work for approximately one month. Plaintiff did not receive any compensation from Defendant-Employer during that period. *Page 6 
23. A month after Plaintiff left Defendant-Employer, in approximately late July 2007 or early August 2007, Plaintiff found a job with Clinton Mechanical. This was after Dr. Huff had assigned light duty restrictions with a ten-pound lifting restriction. Plaintiff went to work in a job that was outside his restrictions because he had been out of work and needed to provide for his family. Plaintiff's employment with Clinton Mechanical was a temporary job with a self-employed man who installed and fixed air conditioning units. Plaintiff was a helper. His job duties included retrieving the tools and equipment needed by his employer.
24. Plaintiff earned $7.50 per hour at Clinton Mechanical. He worked 40 hours per week and was paid approximately $300.00 per week before taxes, which amounted to approximately $216.00 per week after taxes.
25. After Plaintiff worked at Clinton Mechanical for a couple of weeks, he was asked to crawl under houses. Plaintiff was unable to do this as a result of his shoulder and neck problems. Plaintiff left that job and told his employer that he would need to find something else.
26. Approximately two weeks later, in either late August 2007 or early September 2007, Plaintiff accepted a job with Dawes Tree Service. This is a part-time job. Plaintiff earns $10.00 an hour and works 15 to 20 hours a week. Plaintiff was paid approximately $200.00 per week before taxes, which amounted to approximately $144.00 per week after taxes.
27. Plaintiff drives a truck for his current employer. Plaintiff's employer would like for him to be able to get out and cut trees down or use the equipment. However, at present, Plaintiff is physically unable to do heavier labor.
28. Plaintiff does not have health insurance. He has not received any medical treatment since his September 27, 2007, visit to Dr. Huff. *Page 7 
29. The forklift ran over Plaintiff's head. He had severe headaches following the incident and continues to have some occasional headaches. Plaintiff has a great deal of shoulder pain with numbness and he has difficulty moving his shoulder. Plaintiff has numbness in his face and his right cheek is constantly numb. Plaintiff sustained some scarring or "mashing" injuries on his face and head. Plaintiff's left shoulder is numb down to his elbow and he has shoulder pain. Plaintiff still has significant lower back pain. Plaintiff cannot turn and rotate his neck as he could before. He experiences neck stiffness and neck pain when he rotates his head. He also has problems with balance and with his equilibrium. Plaintiff also experiences profuse sweating with any physical activity.
30. Plaintiff testified that he would like to be provided additional treatment with Dr. Huff for his current medical problems. He testified that he wants to know what is causing his numbness and his symptoms.
31. Despite receiving adequate notice of the scheduled workers' compensation and civil penalty assessment hearings, Pro-Se Defendant did not appear before the Deputy Commissioner.
 ***********
Based upon the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On May 24, 2007, an employer-employee relationship existed between Plaintiff and Defendant. N.C. Gen. Stat. § 97-2.
2. On May 24, 2007, the parties were subject to the North Carolina Workers' Compensation Act. N.C. Gen. Stat. § 97-2(3). *Page 8 
3. On May 24, 2007, Plaintiff suffered a compensable injury by accident arising out of and in the course and scope of his employment with Defendant in that he sustained an injury to his head, spine, shoulders, and arms. N.C. Gen. Stat. § 97-2.
4. Plaintiff is entitled to temporary total disability compensation (TTD) for the time period between his employment with Defendant-Employer and Clinton Mechanical, and for the time period between his employment with Clinton Mechanical and Dawes Tree Service, in the amount of approximately $320.00 per week. N.C. Gen. Stat. § 97-29.
5. Plaintiff is entitled to temporary partial disability benefits of $104.00 per week for the two to three week period he worked for Clinton Mechanical. N.C. Gen. Stat. § 97-29.
6. Plaintiff is entitled to temporary partial disability benefits in the amount of $176.00 per week from approximately late August 2007 to the present and continuing until further Order of the Commission. This is compensation for the period he has worked, and continues to work, for Dawes Tree Service. N.C. Gen. Stat. § 97-29.
7. Plaintiff is entitled to the payment of any and all unpaid medical expenses for reasonable and necessary medical care provided as a result of the compensable injury by accident of May 24, 2007. N.C. Gen. Stat. § 97-25.
8. Pursuant to N.C. Gen. Stat. § 97-25, plaintiff is entitled to all future medical treatment related to the compensable injury he suffered on May 24, 2007, subject to the limitations of statute proscribed in N.C. Gen. Stat. § 97-25.1.
9. Defendant failed to make a reasonable defense of this claim and attorney's fees may be assessed. N.C. Gen. Stat. § 97-88.1.
10. Any employer required to secure the payment of compensation who refuses or neglects to secure such compensation shall be punished by a penalty of one dollar ($1.00) for *Page 9 
each employee, but not less than fifty dollars ($50.00) nor more than one hundred dollars ($100.00) for each day of such refusal or neglect, and until the same ceases. N.C. Gen. Stat. § 97-94(b).
11. Defendant failed to purchase workers' compensation insurance as required by N.C. Gen. Stat. § 97-93 to cover his employees for the time period that Plaintiff worked for Defendant-Employer. Defendant had the ability and authority to bring the business into compliance with N.C. Gen. Stat. § 97-93 and may be assessed a penalty equal to 100% of the amount of compensation due Defendant's employees injured during the time his business failed to comply with N.C. Gen. Stat. § 97-93. N.C. Gen. Stat. § 97-94(d).
 ***********
Based upon the foregoing findings of fact and conclusions of law the Full Commission enters the following:
 AWARD
1. Defendant shall pay Plaintiff temporary total disability compensation in the amount of approximately $320.00 per week for the approximately 4.34 weeks between his employment with Defendant-Employer and Clinton Mechanical, and for the two-week time period between his employment with Clinton Mechanical and Dawes Tree Service. Thus, defendant owes plaintiff $2,028.88 in temporary total disability compensation for 6.34 weeks. Such amount shall be paid in lump sum to Plaintiff subject to an attorney's fee hereinafter provided.
2. Defendant shall pay Plaintiff temporary partial disability benefits in the amount of $104.00 per week for the two-and-a-half week period he worked for Clinton Mechanical, which *Page 10 
amounts to $260.00. Such amount shall be paid in lump sum to Plaintiff subject to an attorney's fee hereinafter provided.
3. Subject to an attorney's fee hereinafter approved, Defendant shall pay Plaintiff temporary partial disability benefits in the amount of $176.00 per week for the period he has worked for Dawes Tree Service, which is from approximately late August 2007 to the present and continuing until further Order of the Commission. Compensation that has accrued shall be paid in a lump sum, also subject to the attorney's fee.
4. Defendant shall pay Plaintiff's unpaid medical bills. Defendant shall pay $813.00 to Clinton X-ray Associates, $522.00 to Goshen Medical Center, $420.00 to Huff Orthopaedic Group, $707.00 to Sampson County EMS, and $7,192.64 to Sampson Regional Medical Center, for a total of $9,654.64 in unpaid medical bills.
5. Defendant shall pay for all of Plaintiff's future medical treatment that is reasonable, necessary, and related to the compensable injury Plaintiff suffered on May 24, 2007.
6. A reasonable attorney's fee in the amount of twenty-five percent (25%) of the compensation due Plaintiff under Paragraphs One, Two, and Three of this Award, is approved for Plaintiff's counsel and shall be paid by Defendant as follows: twenty-five percent (25%) of the compensation which has accrued shall be paid directly to Plaintiff's counsel. Thereafter, every fourth (4th) compensation check due under Paragraph Three of this award shall be paid directly to Plaintiff's counsel.
7. Pursuant to N.C. Gen. Stat. § 97-94 (d), a civil penalty of $50.00 is hereby assessed against Defendant for failure to maintain worker's compensation coverage on his employees. *Page 11 
8. Defendant shall provide proof of workers' compensation insurance to the Industrial Commission within 15 days from the file date of this Order. Should Defendant fail to comply with this Order, the Office of the Attorney General shall take all necessary steps to bring this employer in compliance with N.C. Gen. Stat. § 97-93.
9. Defendant shall pay the costs.
This the 6th day of July, 2010.
 S/___________________ DANNY LEE McDONALD COMMISSIONER
CONCURRING:
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER
 S/___________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1